Estate of Frank Charles Smith, Deceased, Commonwealth Trust Company of Pittsburgh, Executor, and Nancy Y. Smith, Executor, Petitioners v. Commissioner of Internal Revenue, Respondent.
Estate of Frank Charles Smith v. Commissioner of Internal Revenue
Docket No. 31197.
United States Tax Court
1952 Tax Ct. Memo LEXIS 25; 11 T.C.M. (CCH) 1167; T.C.M. (RIA) 52343; November 28, 1952
Ross W. Thompson, Esq., 2620 Grant Bldg., Pittsburgh, Pa., for the petitioners, James A. Anderson, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding is for the redetermination of a deficiency in income tax for the year 1947 in the amount of $7,201. The issues presented are: (1) Whether petitioner is entitled to deduct under section 23 (u) of the Internal Revenue Code payments allegedly made in 1947 by Frank Charles Smith, deceased, to his divorced wife, pursuant to an agreement incident to a decree of divorce; and (2) whether the amount of $2,000, representing legal fees paid by decedent in 1947 for services rendered in negotiating the aforesaid agreement, is deductible *26 as a nonbusiness expense under section 23 (a) (2) of the Code. All the facts have been stipulated and are found accordingly. Findings of Fact The Commonwealth Trust Company of Pittsburgh, Pennsylvania, and Nancy Y. Smith are coexecutors of the estate of Frank Charles Smith, deceased. The decedent was a resident of Pittsburgh, Pennsylvania. He died November 24, 1949. The return for the year 1947 was filed by the decedent with the collector of internal revenue for the twenty-third district of Pennsylvania. Decedent and Mabel Q. Smith were married on June 6, 1921. By reason of disputes and unhappy differences arising out of their marital relationship, they separated on December 8, 1945, and thereafter remained apart. In May 1946 preliminary negotiations were entered into for the purpose of securing a divorce, making a property settlement and arranging for the payment of alimony. On November 29, 1946, the decedent and Mabel Q. Smith executed an agreement wherein it was agreed, inter alia: "FIRST: That the husband shall pay to the wife the sum of twenty-five thousand ($25,000.00) Dollars in ten (10) equal semi-annually installments, * * *. "SECOND: That the husband shall pay *27 to the wife in addition thereto, the sum of Three hundred ($300.00) Dollars every month, beginning on the 1st day of December, 1946, payable on the 1st day of every month hereafter for a period of five (5) years, beginning with the day of the first payment as aforesaid. "THIRD: That the husband shall pay in addition thereto to the wife, the sum of One hundred ($100.00) Dollars on the 1st day of December, 1951, and on the 1st day of each calendar month thereafter, a monthly sum or payment of One hundred ($100.00) Dollars, for and during the term of the remainder of the natural life of the wife. * * *
"FIFTH: The husband hereby agrees to name his wife beneficiary of certain life insurance policies as follows: - "NAME OF COMPANY
AMOUNT
1. Continental Casualty
$5,000.00
2. London Guarantee & Accdt.
Co.
$4,500.00
3. Prudential Ins. Co. of America
$4,000.00
4. Prudential Ins. Co. of America
$5,000.00
5. Metropolitan Life Ins. Co.
$5,000.00
"The provision in this paragraph of the husband 'never to change the beneficiary thereof' is hereby construed by the parties hereto to mean 'never to change the beneficiary during the lifetime of the wife, and, in *28 the event the wife should die before the husband, then, all her interest in said policies shall cease and the husband shall have the right in such case to change the beneficiary.' G.D.W. /s/ A. F. Burkardt /s/ And he does hereby assign and set over to her, all his right, title, claim and interest herein and agrees never to change the beneficiary thereof, and to pay the premiums as and when they become due on the said policies, and to keep the said policies in full force and effect at all times in the future. * * *
"EIGHTH: The husband hereby agrees to furnish the said wife during the term of her natural life, a new automobile of standard make every year, and to maintain the same in good running repair as necessary by reason of ordinary wear and tear. "The wife hereby agrees to turn in and surrender to the husband her used automobile every time he furnishes her a new car. "NINTH: All and each of the payments as aforesaid shall be made by the husband to the wife, free of any Federal Income Taxes to herself. That is to say, that in addition to the face value of the payments provided as above, the husband shall pay any and all Federal Income Taxes due thereon. "TENTH: *29 The husband shall have the right to accelerate or anticipate any of the payments due hereunder at any time, and in that event, an allowance shall be made to him amounting to Four (4%) per cent annually on payments so made in advance of the due date. * * *
"FOURTEENTH: This agreement shall be in full settlement, adjustment and compromise of all property questions and rights between the husband and wife. "FIFTEENTH: The payment by the husband to the wife of the sums herein provided shall be a complete discharge by the husband of all liability to support and maintain his wife." On the same date, Mabel Q. Smith signed a libel in divorce against decedent which was filed in the Court of Common Pleas of Allegheny County, Pennsylvania, on December 3, 1946. After the trial a decree in favor of Mabel Q. Smith was entered on March 5, 1947. The decree makes no mention of the separation agreement of November 29, 1946, and contains no provision for alimony. The agreement was executed by the parties incident to and in contemplation of divorce. Pursuant to paragraph "FIRST" of the agreement of November 29, 1946, the decedent drew a check for $2,500 to the order of Mabel Q. Smith, which *30 was delivered to her attorney and held by him until after the entry of the divorce decree on March 5, 1947. The check was cashed by Mabel Q. Smith on March 11, 1947. On August 7, 1947, the decedent made a further payment to his former wife of $2,500 under paragraph "FIRST" of the agreement. The decedent pursuant to paragraph "SECOND" of the agreement made 12 monthly payments of $300 each to his former wife. The first three of such payments were made on dates prior to the entry of the divorce decree. In 1947 the decedent paid premiums amounting to $400 on certain life insurance policies enumerated in paragraph "FIFTH" of the agreement. On December 16, 1947, the decedent, with the intention of complying with paragraph "NINTH", drew a check to the order of Mabel Q. Smith for the amount of $2,300. This check was not cashed until January 10, 1949. In 1947 the decedent paid the sum of $2,000 to his legal advisor for services rendered in negotiating the agreement of November 29, 1946. In 1947, pursuant to paragraph "EIGHTH" of the aforesaid agreement, the decedent provided his former wife with a new Ford automobile at a cost to him of $500. In determining his deficiency the respondent *31 disallowed the amount of $11,300 representing cash payments to the decedent's former wife and the $400 representing insurance premiums claimed by decedent on his 1947 return. The amount of $500 representing the cost to decedent of the new automobile and the amount of $2,000 paid for legal services were not claimed as deductions on the decedent's return for 1947. In the petition filed herein these amounts are alleged to constitute allowable deductions. Opinion LEMIRE, Judge: The primary question presented is whether the payments made by the decedent in the taxable year 1947 to his divorced wife, pursuant to the agreement incident to and in contemplation of divorce, are properly deductible under section 23 (u) of the Internal Revenue Code. Petitioner contends that the agreement of November 29, 1946, must be construed as a whole, and so construed all the payments in question are "periodic payments" within the purview of section 22 (k) of the Code. The respondent contends that since the parties in drafting the agreement have segregated the payments no unified plan of payments was intended, and the character of the payments is to be determined on the basis *32 of the specific paragraph of the agreement under which such payments were made. In the case of Edward Bartsch, 18 T.C. 65 (on appeal, C.A. 2), which involved similar contentions, we sustained the position taken by the respondent. Upon the rationale of the Bartsch case the respondent's contention is sustained. Whether any of the payments constitute proper deductions will be determined in the light of the separate paragraphs of the agreement under which they were made. In 1947 two payments of $2,500 each were made pursuant to paragraph "FIRST" of the agreement. The obligation under such paragraph was the payment of a principal sum of $25,000 in ten equal semi-annual installments commencing on February 15, 1947. Section 22 (k) of the Internal Revenue Code specifically provides that installment payments discharging a part of an obligation, the principal of which is specified in the decree or instrument, shall not be considered periodic payments. Clearly, the two payments in question are not periodic payments, and as they do not meet the conditions set forth in section 22 (k) they are not properly deductible under the provisions of section 23 (u) of *33 the Code. The respondent's disallowance of the deduction of the $5,000 paid in 1947 under paragraph "FIRST" of the agreement is sustained. So holding, it is unnecssary to consider the further contention of the respondent that the first payment of $2,500 is not properly deductible since it was not made subsequent to the entry of the decree, as required by section 22 (k) of the Code. In 1947 the decedent made 12 monthly payments to his divorced wife in the sum of $300 each. These monthly payments were made pursuant to paragraph "SECOND" of the agreement, which provides for monthly payments of $300 for a period of five years. Although the principal sum is not specified in the agreement it is mathematically determinable. The rule is well established that payments of specific amounts for a definite period constitute installment and not periodic payments within the purview of section 22 (k) of the Code. Estate of Frank P. Orsatti, 12 T.C. 188; J. B. Steinel, 10 T.C. 409; Frank R. Casey, 12 T.C. 224. On the basis of these authorities we sustain the respondent's disallowance of the monthly payments aggregating $3,600 made pursuant to paragraph "SECOND" *34 of the agreement. We, therefore, find it unnecessary to consider the respondent's alternative contention that the first three monthly payments, having been made prior to the entry of the decree of divorce, do not meet the conditions of section 22 (k) and, therefore, do not constitute proper deductions under section 23 (u) of the Code. In 1947 the decedent paid the sum of $400 as premiums on certain of the insurance policies set forth in paragraph "FIFTH" of the agreement. The petitioner contends that such amount constitutes additional alimony properly deductible under section 23 (u), under the rationale of Lemuel Alexander Carmichael, 14 T.C. 1356. The respondent argues that the Carmichael case is distinguishable on its facts and is not a controlling authority here. We agree. Several insurance policies were involved in the Carmichael case. One of the policies for $5,000 designated the divorced wife as the primary beneficiary and the daughter as secondary beneficiary. Another $5,000 policy designated the daughter as primary beneficiary and the wife as secondary beneficiary. The decree provided that the husband could not change the beneficiaries at any future time. We *35 held with respect to the policy in which the wife was the primary beneficiary that the premium paid on such policy constituted additional alimony and was deductible under section 23 (u). We denied any deduction with respect to the $5,000 policy in which the divorced wife was named as the secondary beneficiary. In the instant case, although the divorced wife is the primary beneficiary, the agreement provides, in effect, that the designation of the wife as beneficiary shall not be changed during her lifetime. Hence, in the event the divorced wife predeceased the decedent, the latter would regain full possession and control of the policy. This material fact, in our opinion, supports our conclusion that the Carmichael case is not a controlling authority here. As the insurance premium in question was not paid for the sole benefit of the divorced wife, we think, it could not be taxed to her as additional alimony under section 22 (k) of the Code. See, also, Anita Quinby Stewart, 9 T.C. 195; Estate of Boies C. Hart, 11 T.C. 16. We sustain the respondent's disallowance of the sum of $400 claimed as a deduction under section 23 (u) of the Code. Petitioner contends *36 that the amount of $2,300 allegedly paid in 1947, pursuant to paragraph "NINTH" of the agreement providing, in substance, that the decedent is to pay all federal income taxes due on the amounts paid to his divorced wife, is deductible as additional alimony. This record merely shows that decedent drew a check to the order of his divorced wife in the face amount of $2,300 on December 16, 1947, and that the check was cashed on January 10, 1949, one year and 24 days later. The record is silent as to the time the check was delivered. Petitioner has the burden of showing actual payment in order to be entitled to a deduction. A mere showing that a check was drawn without establishing the fact of delivery to and acceptance by the payee is insufficient, in our opinion, to establish payment in the taxable year involved. For failure of proof, we sustain the respondent's disallowance as a deduction in the sum of $2,300 as additional alimony under section 23 (u) of the Code. Petitioner further contends that the sum of $500, which decedent paid to obtain a new automobile in compliance with paragraph "EIGHTH" of the agreement, constitutes a proper deduction. Such amount was not claimed as a deduction *37 in the decedent's return for the year 1947. However, the petition filed herein alleges the deductibility of such amount. The record merely shows that the decedent provided his divorced wife with a new car in 1947 at a cost to him of $500. The time when the payment was made and the car delivered to the divorced wife has not been established. We are unable to determine from the record whether the transaction occurred prior or subsequent to the entry of the decree of divorce. For lack of sufficient proof, we hold that petitioner is not entitled to a deduction in 1947 of the sum of $500, representing the cost to decedent of a new automobile. A further issue raised by the petition is the deductibility as a nonbusiness expense of the amount of $2,000, which the decedent paid to his attorney for legal services in negotiating the settlement agreement. Since neither the main brief nor the reply brief filed by petitioner make an argument in connection with this issue, it may be that its claim has been abandoned. However, if the petitioner has not intended to abandon its claim, we think it is well established that legal fees paid under the circumstances here presented are of a personal character *38 and are not deductible under section 23 (a) (2) of the Code as nonbusiness expenses. Lindsay C. Howard, 16 T.C. 157. Cf. Baer v. Commissioner, 196 Fed. (2d) 646. We, therefore, hold that petitioner is not entitled to a deduction in the amount of $2,000 paid to his attorney for legal services in connection with the settlement agreement. The alternative contention of petitioner that it is entitled to a deduction in the amount of $8,474, represening ten per cent of the principal sums payable under the excepting clause of section 22 (k), is without merit. The excepting clause relied upon provides, in substance, that an installment payment shall be considered a periodic payment if the principal sum specified in the decree or instrument is to be paid within a period ending more than ten years from the date of the decree. Under the agreement in question both principal sums specified therein are to be paid within the first five years. We think it is clear that the excepting clause is not applicable under the facts here in question. Decision will be entered for the respondent.