962 F.2d 14
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Elyse RUTH, Petitioner-Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent-Appellee.
 No. 91-70324.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 4, 1992.*
Decided May 6, 1992.
 
 Before ALARCON, WILLIAM A. NORRIS and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Elyse Ruth appeals a United States Tax Court decision that she has a tax deficiency for 1983 in the amount of $831. Ruth argues that she met her burden of proving that the income in question was not taxable. Ruth also contends that the Commissioner of Internal Revenue ("Commissioner") should be equitably estopped from collecting the tax deficiency. We affirm.
 
 
 3
 * The Commissioner determined that Ruth had failed to report $4,421.80 in interest income in 1983, leading to a tax deficiency of $831.00. Before the Tax Court, Ruth stipulated that such interest income had indeed been paid to her from three bank accounts,[1] and that she had failed to report such income on her Form 1040 submitted for the 1983 tax year. Ruth argued, however, that such interest income was excludable under section 71(c) of the Internal Revenue Code.[2] Under former section 71(c), payments made from one former spouse to another as part of a property settlement following a divorce were not taxable to the payee spouse. 26 U.S.C. § 71(c) (1982); White v. Commissioner, 770 F.2d 685, 687 (7th Cir.1985).
 
 
 4
 The Tax Court found that Ruth had "failed to prove her case." Ruth argues on appeal that the Tax Court erred in finding that Ruth failed to meet her burden of proof. The determination that Ruth failed to produce sufficient evidence to support an exclusion of income is one of fact, subject to reversal only if clearly erroneous. See Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir.1985). " 'A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.' " P.R. Farms, Inc. v. Commissioner, 820 F.2d 1084, 1086 (9th Cir.1987) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).
 
 
 5
 Interest paid on deposits in banks and credit unions is ordinarily taxable as income, 26 U.S.C. § 61(a)(4), but Ruth argues that the interest here was excludable from income under section 71(c). When Ruth and her husband divorced, she relinquished her interest in real property the couple had owned while married in exchange for $37,500. Thus, under section 71(c) payments made by her former husband to Ruth toward the $37,500 settlement would be excluded from Ruth's income.
 
 
 6
 Ruth argues that not only is a payment from her former husband itself excludable from income, but also interest paid on such payment after it had been received by Ruth and deposited in her bank. Ruth claims that her husband paid her $14,364.23 shortly after the divorce was final, that she deposited such money into the three bank accounts, and that she and her former husband agreed that the interest that accrued on such funds would be credited toward the $37,500 owed Ruth. Ruth further claims that four-and-a-half years later, she received $11,575.55, and that if one were to add this figure to the earlier payment of $14,364.23 and its accrued interest, it would equal $37,500.
 
 
 7
 Aside from Ruth's own testimony before the Tax Court, which the court described as "self-serving" and which gave no more detail than what has just been stated, however, there was no evidence that this was in fact what occurred. Ruth presented no evidence that the $14,364.23 was deposited in any or all of the three bank accounts. There was no evidence as to the dollar figure of interest that had accrued over the years. There was no evidence that Ruth's former husband had any connection to the $11,575 payment, which was made by one Carol J. Warnsholz. There was no evidence that the original divorce settlement, which makes no mention of any such arrangement, had been amended by the parties. Indeed, the documentary evidence presented to the Tax Court by Ruth in some respects contradicted her account. For example, in the letter from her former husband accompanying the check for $14,364.23, not only was there no mention of the money being segregated with the interest accruing on it being credited toward the $37,500 owed, but he characterized the check as being the "final payment of principal and interest due ... in connection with the property settlement at our divorce conclusion."
 
 
 8
 Perhaps most important, Ruth presented no evidence, not even her own testimony, regarding control and ownership of the three bank accounts. "Generally, interest earned on investment is taxable to the person who controls the principal." P.R. Farms, 820 F.2d at 1086. This is true even where the principal itself had been excludable from taxable income when received by the taxpayer. See Commissioner v. Raphael, 133 F.2d 442, 446-47 (9th Cir.) (even if part of judgement itself is not taxable, interest on judgment is taxable income), cert. denied, 320 U.S. 735 (1943); 26 U.S.C. § 102 (gift itself is excluded from income, but interest earned on gift is taxable income). Thus, after Ruth received a payment from her former husband (that was excludable from income) and invested such payment, whether it be in a savings account, real estate, or the stock market, the interest, rents, or profits earned on such investment would be taxable income.
 
 
 9
 Ruth could only escape tax liability on the interest payments by showing that her former husband actually or constructively controlled the three bank accounts, earned the interest, and then assigned it to her in satisfaction of his debt to her. Ruth presented no evidence whatsoever as to who in fact controlled the bank accounts in question, or concerning who held legal or equitable title to the accounts. Thus, the Tax Court was entitled to infer "that [Ruth] was the sole owner of those accounts and had full authority and power to dispose of those accounts at any time she saw fit." See McKay v. Commissioner, 886 F.2d 1237, 1238 (9th Cir.1989) (where taxpayer failed to testify on an issue "peculiarly within his knowledge," tax court "properly concluded that his testimony would be unfavorable to him").
 
 
 10
 Control and ownership of the three bank accounts was material to establishing that the interest payments were excludable from income, and Ruth presented no evidence on this subject. We hold that the Tax Court was not clearly erroneous in finding that Ruth failed to show by a preponderance of the evidence that the interest payments were excludable under section 71(c).
 
 II
 
 11
 Ruth also argues that the Commissioner should be equitably estopped from collecting the 1983 tax deficiency. Ruth introduced four letters at trial which she contends show conduct by the Commissioner so egregious as to preclude collection of the deficiency in question here. One of these letters, however, was written not by an agent of the Commissioner, but by Ruth herself.
 
 
 12
 The three remaining letters all concern the Commissioner's efforts to collect an alleged tax deficiency from an earlier tax year. Even assuming that the Commissioner's representations about Ruth's earlier tax deficiency are inconsistent with his position in this matter, the Commissioner cannot be estopped from correcting past mistakes of law. Schuster v. Commissioner, 312 F.2d 311, 317 (9th Cir.1962).
 
 
 13
 Although apparently conceding that the evidence of error or misconduct all concerns a different tax year, Ruth points out that an agent of the Commissioner wrote that "the issues for 1983 are substantially the same" as the issues in the earlier alleged tax deficiency. From this Ruth argues that the usual rule that the Commissioner need not be consistent in the tax treatment of income from year to year should not apply here. Whether the same issues are presented is itself a question of law, however, and hence the Commissioner is not bound by this statement to treat the deficiency here the same as the earlier deficiency.
 
 
 14
 Ruth also points to a statement made by an agent of the Commissioner that the earlier case had been closed, which would appear to be a statement of fact, not law. The Commissioner later claimed the earlier case had not been closed. Without addressing the applicability of estoppel doctrine to mistakes of fact rather than law, in any event we fail to see how this alleged misstatement regarding another alleged tax deficiency has any bearing on the matter before us.
 
 
 15
 The pattern of egregious misconduct alleged by Ruth concerns a different tax year and tax deficiency than this case. We conclude that the Tax Court did not err in determining that Ruth had failed to show that the elements of estoppel were present for the 1983 tax year.
 
 
 16
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit R. 36-3
 
 
 [1]
 Ruth was paid $117 by Maryland Federal Savings, and $4,332 from two separate accounts at the Internal Revenue Federal Credit Union. Of these amounts, apparently $27.20 was reported by Ruth on her Form 1040
 
 
 [2]
 Section 71(c) was repealed in 1984